607 S.E.2d 793

**Marie RICHARDSON, Plaintiff Below, Appellant,**

v.

**KENTUCKY NATIONAL INSURANCE COMPANY, Defendant Below, Appellee.**

**No. 31658.**

Supreme Court of Appeals of West Virginia.

Submitted: Nov. 9, 2004.

Filed: Dec. 3, 2004.

---

Thomas Gene Truman, Esq., Beckley, for Appellant.

Amy M. Herrenkohl, Esq., Herrenkohl Law Office, Barboursville, for Appellee.

STARCHER, Justice.

In this appeal from the Circuit Court of Raleigh County, we are asked to review an order awarding attorney's fees to a policyholder for litigating an action against an insurer to enforce an insurance contract. While the case law of this Court supports an award of reasonable attorney's fees in such an action, the circuit court determined that the amount of a "reasonable" fee was a question of fact, and submitted the question to a jury for resolution.

After careful consideration of the briefs and arguments of the parties, we conclude that the amount of an award of a policyholder's attorney's fees in an action against the policyholder's insurer is a question that lies within the province of the circuit court. We therefore reverse the circuit court's order.

## I.

### Facts & Background

In January 1986, appellee Kentucky National Insurance Company issued a personal property insurance policy with a face value of $7,500.00 to the appellant, Marie Richardson.[1] A schedule attached to the policy indicates that the appellee agreed to insure the "household contents" of a house owned by the appellant located in Raleigh, West Virginia, and the policy specifically states:

THE PROPERTY INSURED is Contents of the Named Insured at the location shown in the Schedule. Contents is defined as household and personal property

1. The policy at issue was originally issued by a predecessor to the appellee, Kentucky Central Insurance Company.

usual to a dwelling ... belonging to the Insured or a member of the family of the Insured, while contained in the dwelling.

In November 1999, Ms. Richardson was nearing eighty-five years of age and could apparently no longer maintain the Raleigh household. Accordingly, she moved into a subsidized, assisted-living apartment in Beckley, West Virginia, and took with her only a TV and her bedroom furniture. The balance of her personal property remained in the Raleigh household.

It appears that, at some point, the appellee insurance company was notified of Ms. Richardson's change of address, and the new address in Beckley was noted in the appellee's computer files. However, there is nothing in the record to suggest that Ms. Richardson requested that the appellee insure her personal property at the Beckley address and cancel the coverage on her personal property at the Raleigh address. Likewise, the appellee acknowledges that no new schedule, declarations page or policy was issued to show that the location of the personal property insured by the policy had been changed from the Raleigh household to the Beckley apartment.

On December 29, 2000, the house located in Raleigh was destroyed by fire. On January 2, 2001, Ms. Richardson notified the appellee insurance company that she sought coverage for the loss of her personal property contained in the Raleigh household. An adjuster for the appellee noted that the appellee's computer files listed only the appellant's Beckley address, and not the Raleigh household. On that basis alone, the appellee refused to provide coverage for the appellant's loss.

Ms. Richardson subsequently hired an attorney, and the attorney contacted the appellee's adjuster in an attempt to rectify the error. The adjuster again reviewed the information contained in the appellee's computer files. The adjuster again noted that appellant Richardson's address had been changed from Raleigh to Beckley in 1999, and therefore again denied coverage for the claim.

On July 20, 2001, appellant Ms. Richardson filed a complaint alleging that appellee Kentucky National had breached its insurance contract with the appellant, and alleging that the appellee had violated the West Virginia Unfair Trade Practices Act [2] and had acted outrageously and in bad faith in denying her claim. Upon being served with the complaint, the appellee claims that, rather than relying on its computer files, it searched its archives for an original copy of the policy issued to Ms. Richardson. The appellee contends that, for the first time, it discovered that the policy "schedule" still indicated that the Raleigh property was insured, and that a new schedule listing the Beckley property as the insured site had never been issued.

The parties present vastly different interpretations of what happened next. The appellee insurance company contends that upon recognizing its error, it immediately contacted the appellant's counsel and, through oral communications, sought to resolve the case for an amount equal to any damages Ms. Richardson incurred as a result of the delay in payment. The appellee contends that it repeatedly sought to settle the case before either party incurred the costs of litigation.

The record does contain several letters reflecting that the parties had engaged in settlement discussions by telephone, but only three of those letters contain specific demands. By letters dated August 21 and December 26, 2001, the appellant offered to settle her claims for $50,000.00. On January 29, 2002, the appellee made a written offer to settle the case for $15,000.00, and stated that the settlement "is not an admission of liability." On February 26, 2002, the appellant responded that after discussions with her counsel, she was not willing to accept the offer and had no counter demand. No subsequent settlement discussions between the parties are noted in the record.

The appellant, on the other hand, asserts that the appellee insurance company never issued or offered to issue a check to Ms. Richardson for the policy proceeds. Instead, the appellant asserts that the appellee engaged in numerous procedural maneuvers that had no legal basis, and did nothing but

2. See W.Va.Code, 33–11–1 to 33–11–11.

increase the parties' costs of litigation. For instance, the appellant points out that the appellee insurance company did not initially answer the complaint, but instead filed a motion to remove the matter to federal court; when the appellant filed a motion to remand the matter to state court—a motion that was later granted—on the ground that the damages sought were less than the federally-required jurisdictional amount of $75,000.00, the appellee filed no response.

Further, the appellant points out that when the appellee did answer the complaint, it asserted a third-party complaint against several of the appellant's relatives who were living at the Raleigh household at the time of the fire, and against a corporate defendant that had provided one of the appellant's relatives with portable oxygen that may have caused or contributed to the fire. However, the appellee never investigated these third-party claims, and never served the third-party complaint on any of the third-party defendants. The appellee did, however, shortly before the trial, assert as grounds for a continuance the theory that it might have exposure to a claim by these third-party defendants for any losses they might have experienced in the fire. But when the circuit court indicated an inclination to grant the continuance over the appellant's objection, the appellee withdrew the motion to continue.

Finally, the appellant argues that the appellee steadfastly refused to acknowledge any error in its claims handling process until the first day of trial in September 2002 when, during opening statements, counsel for the appellee admitted that a mistake had been made. The appellant asserts that the appellee's adjuster admitted in his deposition that Ms. Richardson's insurance claim would never have been reconsidered and the mistake discovered had she not filed and pursued the instant lawsuit.

The case was tried to a jury in September 2002, and at the close of the evidence, and over the appellant's objection, the circuit court granted motions by the appellee to dismiss the appellant's common law bad faith and Unfair Trade Practice Act causes of action, and to dismiss the appellant's claim for the tort of outrage.[3] The jury returned a total verdict in favor of the appellant for $25,000.00. The jury concluded that the appellee had breached its insurance contract with the appellant, and awarded her the policy limits of $7,500.00. The jury also awarded the appellant $7,500.00 for the aggravation and inconvenience caused by the appellee's conduct. Neither the appellant nor the appellee challenges these two portions of the jury's verdict, and the judgment on these portions of the verdict has been satisfied by the appellee.

■ The parties' arguments in this appeal focus on the third and final portion of the jury's verdict: a $10,000.00 award of attorney's fees. We have previously held that when a policyholder substantially prevails in a first-party lawsuit against her insurance company to enforce an insurance contract, the policyholder may recover, among other consequential damages, her reasonable attorney's fees and costs. As we stated in Syllabus Point 1 of *Hayseeds, Inc. v. State Farm*

---

**3.** Counsel for the appellant does not directly challenge the dismissal of these causes of action because the appellant herself advised counsel that she did not have the mental or physical strength to appeal these unfavorable rulings. Counsel for the appellant does, however, indirectly challenge the circuit court's rulings by relating the testimony of the appellee's claims manager, Tom Malone. Mr. Malone's testimony allegedly established that the appellee had no claims adjustment manual, or other standards or procedures for the prompt investigation of claims; that the appellee's investigation of the claim was unreasonable because the only investigation into the appellant's claim was to review a computer screen; that the appellee misrepresented the coverage of the policy by repeatedly claiming it covered the Beckley apartment rather than the Raleigh household; and that, once the appellee realized it had made a mistake in denying the claim, it made no effort to effectuate a prompt settlement of the claim. The appellee contends these actions plainly establish that the appellant violated the Unfair Trade Practices Act, specifically *W.Va.Code*, 33–11–4(9). The appellant also relates that her expert witness, Ralph C. Young, would have testified that the appellee's actions violated the Act, and also constituted bad faith in the settlement of the claim; however, the circuit court granted the appellee's motion to exclude Mr. Young's testimony from the trial after the jury was sworn, but before opening statements.

*Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986),

> Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

The appellant objected to the circuit court's decision to submit the issue of the amount of a reasonable attorney's fee to the jury, and requested that the circuit court calculate a proper fee. Following the trial, counsel for the appellant submitted a motion for fees to the circuit court that included a detailed accounting of 192.55 hours of tasks performed in prosecuting the appellant's claims, and based upon an hourly rate requested that the circuit court award the appellant $33,696.25 for her attorney's fees.

In an order dated June 25, 2003, the circuit court rejected the appellant's arguments. In doing so, the circuit court examined the parties' settlement negotiations, particularly the appellant's demands that the appellee settle for $50,000.00, and the appellee's January 2002 counter-offer of $15,000.00 to settle all claims without an admission of liability. The circuit court concluded that on February 26, 2002, when counsel for the appellant rejected the appellee's $15,000.00 settlement offer, the appellant effectively terminated settlement negotiations. The circuit court concluded that the negotiation stance taken by the appellant, alone, "caused the unnecessary expenditure of time and money by both sides."

The circuit court therefore determined that the calculation of reasonable attorney's fees stopped on February 26, 2002, and entered a judgment that counsel for the appellant was entitled to only $10,000.00 in fees, as awarded by the jury.[4]

The appellant now appeals the circuit court's June 25, 2003 order.

## II.

### Discussion

The issue presented by the parties is this: when a policyholder substantially prevails on a first-party insurance claim against an insurer and becomes entitled to reimbursement of a reasonable attorney's fee under *Hayseeds v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986) and its progeny, is the amount of the attorney's fee to be determined by the judge or by the jury? The parties agree that this is an issue of first impression before this Court.

Our standard of review is plenary. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

The appellant contends that the issue of whether the judge or the jury should determine a reasonable attorney fee did not arise in this case until the jury instruction phase of the trial.[5] The parties agree that by this point, the evidence was closed, and the appellant contends that neither party had introduced any evidence—such as the number of hours to prepare the case for trial, the appellant's attorney's hourly fee, or the customary fee in such a case—on the issue of a proper amount of attorney fees. The appellant argued that it was the circuit court's duty to determine a reasonable fee. The appellee,

---

4. However, in the penultimate paragraph of the order, the circuit court noted that

   [I]f upon review the appellate court determines that the calculation of a reasonable attorney fee is a matter for the judge and not for the jury, it is this Court's opinion that a reasonable attorney fee in this case is $8,242.50.

   The circuit court reached this figure by calculating that the appellant's attorney did 47.1 hours of work on the case prior to February 26, 2002, and for that work was entitled to be paid $175.00 an hour.

5. While the appellee asserts that the issue arose much earlier in the case, we find nothing in the sparse record to support this assertion. The appellee also asserts in its appellate brief that "Ms. Richardson did testify as to the contract between her and her attorneys;" however, we do not know the substance of this testimony because no transcript of the trial is included in the record.

however, argued to the circuit court that should the appellant substantially prevail then the amount of a "reasonable" attorney fee was necessarily a question of fact for jury determination. The circuit court adopted the appellee's position, and instructed the jury that it could award "the insured policyholder's reasonable attorney's fees in vindicating [her] claim[.]"

The parties maintain the same positions on appeal. The appellee contends that reasonable attorney's fees are an integral element of the damages available under *Hayseeds,* and takes the position that this Court has *implicitly* ruled that a jury should resolve the question of a proper fee. The appellee's argument relies upon *McCormick v. Allstate Ins. Co.,* 197 W.Va. 415, 426, 475 S.E.2d 507, 518 (1996) where we stated:

> [W]e note the principles we have reviewed here work as they were intended where *all the issues appropriate to a* Hayseeds-*type case have been put before a jury.* In the present case, not all elements of damages appropriate under *Hayseeds* were presented to the jury.

(Emphasis added.) The appellee also relies upon a case cited by the Court in *Hayseeds, Mustachio v. Ohio Farmers Ins. Co.,* 44 Cal. App.3d 358, 118 Cal.Rptr. 581 (1975) (*see* 177 W.Va. at 329, 352 S.E.2d at 79). In *Mustachio,* a first-party bad-faith case, the California court held in reversing a denial of an award for attorney's fees:

> We have no way of determining by how much, if at all, the jury would have increased its award had plaintiff been permitted to offer evidence of attorney's fees. The error in rejecting it out of hand was therefore necessarily prejudicial.

44 Cal.App.3d at 364, 118 Cal.Rptr. at 585.

The appellant, however, argues that the question at bar was implicitly resolved by the Court in *Hayseeds.* Writing for the Court, Justice Neely noted that, while the American rule is generally that each side in a civil lawsuit pays its own attorney's fees, in the context of insurance coverage cases many courts and legislatures had chosen to shift the burden of paying a policyholder's attorney's fees onto the insurance company as a way of encouraging the prompt payment of valid claims. 177 W.Va. at 328–29, 352 S.E.2d at 78–79. This rule was adopted

> ... in recognition of the fact that, when an insured purchases a contract of insurance, he buys insurance—not a lot of vexatious, time-consuming, expensive litigation with his insurer.... To impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain.

177 W.Va. at 329, 352 S.E.2d at 79–80. *In accord, Miller v. Fluharty,* 201 W.Va. 685, 694, 500 S.E.2d 310, 319 (1997) ("The policy underlying *Hayseeds* ... is that a policyholder buys an insurance contract for peace of mind and security, not financial gain, and certainly not to be embroiled in litigation.")

The Court in *Hayseeds* explicitly adopted a rule whereby, if a policyholder must sue his or her own insurance company to enforce an insurance contract, and the policyholder substantially prevails in the claim, the insurance company is liable for the payment of . the "policyholder's reasonable attorneys' fees." 177 W.Va. at 329, 352 S.E.2d at 80.[6] Justice Neely suggested the following rough formula for calculating a "reasonable" fee:

> Presumptively, reasonable attorneys' fees in this type of case are one-third of the face amount of the policy, unless the policy is either extremely small or enormously large. This follows from the contingent nature of most representation of this sort and the fact that the standard contingent fee is 33 percent. But when a claim is for under $20,000 or for over $1,000,000 (to take numbers that are applicable in 1986) the court should then inquire concerning what "reasonable attorneys' fees" are.

177 W.Va. at 329–30, 352 S.E.2d at 80.

The appellant cites to Justice Neely's discussion of a "reasonable fee" in *Hayseeds,*

---

6. In the later case of *Miller v. Fluharty,* 201 W.Va. 685, 698, 500 S.E.2d 310, 323 (1997) we made it clear that "[o]ur cases do not require a policyholder to prove a particular form of 'bad' conduct by an insurance carrier" to recover consequential damages under *Hayseeds.* "Our 'bright-line' standard is clear: once a demand is unmet by an insurance carrier, a policyholder need only prove he or she has substantially prevailed." *Id.*

and argues that the language can only be interpreted to mean that a judge, not a jury, is properly empowered to calculate a policyholder's reasonable attorney's fee. The appellant argues that a reasonable fee, in the typical case, is presumed to be one-third of the face amount of the policy. However, when the policy limit at issue is extremely small or enormously large—such as under $20,000.00 or over $1,000,000.00—the circuit court should make an inquiry into what a reasonable fee might be.

■ After a careful examination of *Hayseeds* and its progeny, we are persuaded by the appellant's argument. When a policyholder substantially prevails on a first-party insurance claim against an insurer and becomes entitled to a reasonable attorney's fee under *Hayseeds* and its progeny, the amount of the attorney's fee is to be determined by the circuit judge and not by a jury. A policyholder becomes entitled to recover a reasonable attorney's fee from an insurance carrier when there is proof that "the attorney's services were necessary to obtain payment of the insurance proceeds." Syllabus Point 1, *in part, Jordan v. National Grange Mut. Ins. Co.*, 183 W.Va. 9, 393 S.E.2d 647 (1990).

■ The means that a circuit judge uses to calculate a reasonable attorney's fee is a matter left to the judge's discretion. We reiterate our holding in *Hayseeds*, however, that a reasonable attorney's fee is presumptively one-third of the face amount of the policy, unless the amount disputed under the policy is either extremely small or enormously large.[7] In these latter circumstances, the judge shall conduct an inquiry concerning a reasonable attorney's fee.[8]

■ In determining whether a policyholder had substantially prevailed and was entitled to consequential damages under *Hayseeds*, we set forth the following requirement in Syllabus Point 4, *in part*, of *Miller v. Fluharty*, 201 W.Va. 685, 500 S.E.2d 310 (1997):

When examining whether a policyholder has substantially prevailed against an insurance carrier, a court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds. If the policyholder makes a reasonable demand during the course of the negotiations, within policy limits, the insurance carrier must either meet that demand, or promptly respond to the policyholder with a statement why such a demand is not supported by the available information.

We believe a similar analysis should be applied in the calculation of a reasonable attorney's fee. In other words, a circuit judge, in calculating a reasonable attorney's fee under *Hayseeds*, should look at the negotiations between the policyholder and the insurance company as a whole from the time of the

---

7. We recognize—as Justice Neely recognized in *Hayseeds* in 1986—that the phrases "extremely small" or "enormously large" are inherently vague and subject to debate. Still, we choose to adopt the phrases because of the ever-decreasing value of money. Hence, in the future when a policyholder with a valid claim is compelled by an insurance company to expend significant attorney effort to recover a "small" amount of coverage under a policy, the policyholder will still be able to shift the entire attorney's fee onto the insurance company, if the entire amount of the attorney's fee is found to be reasonable by a trial judge applying the factors set out in Syllabus Point 4 of *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986). Likewise, if a future attorney's efforts recover an "enormously large" amount of coverage for a policyholder, the attorney's fee will be limited to that which is conscionable and in accord with the risk and effort undertaken by the attorney.

8. From the record in the instant case and the statements of the parties at oral argument, we discern that confusion often results when the parties do not specify whether attorney's fees are or are not included within a settlement offer. For instance, in the instant case, the appellee insurance company asserted at oral argument that its $15,000.00 settlement offer in January 2002 *included* the appellant's attorney's fee. But the circuit court, looking at the evidence of record, found that "[t]his case could have been and should have been settled at that time on those terms, *plus* a reasonable amount for attorney fees pursuant to *Hayseeds*."

The better practice—for attorneys representing both policyholders and insurance companies—would be to specify in the negotiations whether or not *Hayseeds*-type consequential damages and attorney's fees are included or excluded from a settlement offer.

insured event to the final payment of the insurance proceeds.

The factors for circuit judges to use in calculating a reasonable attorney's fee were set forth by this Court in Syllabus Point 4 of *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986), where we stated:

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Circuit judges assessing the reasonableness of an attorney's fee in a *Hayseeds*-type first-party insurance claim should, particularly when the amounts at issue under the policy are extremely small or enormously large, apply the *Pitrolo* factors during their inquiry.

Applying our holding to the instant case, we conclude that the circuit court erred when it allowed the jury to consider the question of the amount of the appellant's reasonable attorney's fee. This is particularly so in light of the fact that neither side put any evidence before the jury—such as the time and labor required to prepare the case for trial, or the novelty and difficulty of the issues raised in the case—regarding this question.

The question remains, however, whether the $10,000.00 attorney's fee calculated by the jury and approved by the circuit court is a proper fee. The appellant asserts that the circuit court abused its discretion in refusing to set aside the fee. The appellant further asserts that the circuit court abused its discretion by stating, as discussed *supra* in footnote 4, that if this Court overturns the $10,000.00 fee, then the appellee should be liable to the appellant for a reasonable attorney's fee of only $8,242.50.

"This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard." Syllabus Point 4, *in part, Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996). After carefully reviewing the record on appeal, we believe that the circuit court abused its discretion when it declined to consider compensating the appellant for legal work done by the appellant's counsel after February 26, 2002. The circuit court should have looked at the negotiations between the appellant and the appellee as a whole, from the time of the insured event to the final payment of the insurance proceeds. The record indicates that the appellee—from the time of the destruction of the Raleigh household until sometime after the entry of judgment—never offered to pay to Ms. Richardson the proceeds of her insurance policy while leaving other issues for a later resolution. The appellee's offer was a "take it or leave it" proposition: the appellee knew it had an obligation to pay the appellant's claim, yet it essentially held the proceeds of the insurance policy hostage in order to settle all of the appellant's other statutory and common law claims. The appellee now admits that a mistake was made in denying Ms. Richardson's claim—but the record supports a conclusion that the appellee waited over a year to pay that claim once liability for the claim became clear to the appellee. The appellee claims it first discovered its mistaken failure to pay the appellant's claim after researching its archives—a discovery its adjuster admits was only made because of the appellant's July 2001 lawsuit—but did not pay the appellant the proceeds of her policy until after the jury returned a verdict in September 2002.

While the circuit court correctly noted that "[s]ettlement negotiations regarding a first-party policy are, of course, built on a two-way street," *Miller v. Fluharty*, 201 W.Va. at

699, 500 S.E.2d at 324, we believe that the circuit court gave undue weight to the appellant's February 26, 2002 letter rejecting the appellee's settlement offer. The appellee's post-trial humility is not matched by its pre-trial actions of record. Likewise, we cannot say on the existing record that the appellant's decision to proceed with the discovery and trial of her common law and statutory claims against the appellee constituted an unreasonable refusal to engage in settlement discussions.

### III.

*Conclusion*

The circuit court's June 25, 2003 order is reversed, including the circuit court's pre-appeal determination of what would be an appropriate attorney's fee, and the case is remanded for calculation of a reasonable attorney's fee for the appellant's counsel consistent with this opinion, including an appropriate fee for this appeal.

Reversed and Remanded.

Justice McGRAW, deeming himself disqualified, did not participate in the decision of this case.

Judge DEREK SWOPE, sitting by temporary assignment.