664 S.E.2d 706

Joseph FAUBLE and Rebecca Fauble, Plaintiffs below, Appellants

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, as Subrogee of Joseph Fauble and Rebecca Fauble, Intervenor, Appellee

v.

Alex E. Paris Contracting, Inc., Defendant Below, Appellee.

No. 33667.

Supreme Court of Appeals of West Virginia.

Submitted March 12, 2008.

Decided June 16, 2008.

---

Mark Jenkinson, Esq., Lawrence M. Schultz, Esq., Burke, Schultz, Harman & Jenkinson, Martinsburg, WV, for Appellants.

Walter M. Jones, III, Esq., Michael M. Stevens, Esq., Martin & Seibert, Martins-burg, WV, for Appellee, Nationwide Mutual Fire Insurance Company.

PER CURIAM.

This matter is before this Court upon the appeal of Joseph and Rebecca Fauble from the December 5, 2006, order of the Circuit Court of Berkeley County, West Virginia, denying their request for attorney fees from their insurer, Nationwide Mutual Fire Insurance Company. The request of the Faubles arose following litigation concerning the reduction of Nationwide's claim for reimbursement for insurance proceeds Nationwide paid for damages to the Fauble home caused by Alex E. Paris Contracting, Inc., during the installation of a sewer line. Nationwide asserted that, in view of an $80,000 settlement agreement between the Faubies and Paris Contracting, Nationwide was entitled to reimbursement of the entire $49,843.43 it paid the Faubies under the policy. On October 6, 2005, however, the Circuit Court entered an order holding that, pursuant to *Federal Kemper Insurance Co. v. Arnold*, 183 W.Va. 31, 393 S.E.2d 669 (1990), Nationwide's $49,843.43 reimbursement would be reduced by $16,614.47, representing Nationwide's *pro rata* share of the cost incurred by the Faubies in obtaining the $80,000 settlement agreement. An appeal by Nationwide from the October 6, 2005, order was refused by this Court.

In this proceeding, neither side challenges the October 6, 2005, order concerning the $ 16,614.47 reduction of Nationwide's reimbursement for its share of the costs incurred by the Faubies. That order resulted from the Faubies' third-party claim against the tortfeasor, Alex E. Paris Contracting, Inc., a party not involved in this appeal. The Faubles contend, however, that the October 6, 2005, reduction of Nationwide's reimbursement to reflect its share of the cost of obtaining the settlement was based upon a point of well-settled law in West Virginia under *Federal Kemper* and that Nationwide's intransigence in that regard should have resulted in a further order awarding the Faubles attorney fees for successfully reducing Nationwide's reimbursement by $16,614.47. Consequently, the assignment of

error to be determined by this Court concerns the order of December 5, 2006, denying such relief upon the Faubles' petition for attorney fees against their insurer, Nationwide, for successfully reducing Nationwide's reimbursement.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court is of the opinion that, as a result of the litigation which was imposed upon the Faubles to successfully obtain the $16,614.47 reduction, the Faubles should have been awarded reasonable attorney fees against Nationwide. Nevertheless, this Court is further of the opinion that the $60,610 sought by the Faubles is unsupported by the record currently before this Court. Therefore, the December 5, 2006, order of the Circuit Court is reversed, and this matter is remanded to that Court for a determination of the amount of reasonable attorney fees to which the Faubles are entitled upon their petition against Nationwide, including an amount of reasonable attorney fees and costs incurred in appealing the December 5, 2006, order to this Court.

## I.

### Factual and Procedural Background

#### A.

### The Order of October 6, 2005

In May 2003, the Faubles' home in Bunker Hill, West Virginia, sustained damages from the use of explosives by Alex E. Paris Contracting, Inc., upon adjacent property during the installation of a sewer line. In June 2003, the Faubles submitted a claim for the damages under their homeowners insurance policy. The policy was issued by the appellee, Nationwide Mutual Fire Insurance Company. In addition, the Faubles hired counsel to pursue recovery from Paris Contracting. Paris Contracting's liability insurer was Zu-

rich American Insurance Company. By September 2004, Nationwide had paid the Faubles $49,843.43 under the homeowners policy.

The homeowners policy contained a subrogation clause pursuant to which Nationwide informed Zurich, in October 2004, that it was seeking reimbursement of the entire $49,843.43.[1] In the meantime, the Faubles pursued and, in January 2005, obtained a settlement agreement with Paris Contracting in the amount of $80,000 concerning the damages to their home. Payment by Paris Contracting of the $80,000 was held in abeyance, however, pending resolution of whether Nationwide was entitled to reimbursement of the full $49,843.43. The Faubles asserted that, because of their efforts in pursuing the third-party claim against Paris Contracting, Nationwide was not entitled to a dollar-for-dollar reimbursement of the $49,843.43.

On February 14, 2005, the Faubles filed an action in the Circuit Court of Berkeley County against Alex E. Paris Contracting, Inc. Alleging negligence and strict liability, the Faubles sought recovery for the damages to their home caused by the use of explosives. Shortly after filing the complaint, the Faubles filed a motion to enforce the $80,000 settlement agreement they reached with Paris Contracting. By order entered on May 11, 2005, the Circuit Court allowed Nationwide to intervene in the action to assert its subrogation claim.[2] Specifically, the order permitted Nationwide to file a complaint against Paris Contracting demanding judgment in the amount of $49,843.43, the amount Nationwide had paid the Faubles.

Ultimately, the Faubles filed a cross-claim and a request for declaratory relief against Nationwide. The Faubles asked the Circuit Court to determine their rights under the homeowners policy and hold that Nationwide was entitled to reimbursement upon its subrogation claim in the amount of $33,228.96, which represented two-thirds of the

---

1. The subrogation clause in the policy issued by Nationwide stated: "When we pay a loss, an insured's right to recover from someone else becomes ours up to the amount we paid. An insured must protect these rights and help us enforce them."

2. Rule 24(b) of the West Virginia Rules of Civil Procedure is entitled "Permissive intervention" and states, in part, that, upon timely application, "anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common."

$49,843.43. The Faubles alleged that they were entitled to $16,614.47, the remaining one-third, which represented Nationwide's *pro rata* share of the cost or attorney fees incurred by the Faubles in obtaining the settlement agreement with Paris Contracting. The Faubles asserted that Nationwide's insistence upon reimbursement of the entire $49,843.43 wrongfully prevented the settlement from going forward and constituted a violation of well-settled law in this State under *Federal Kemper*. Thereafter, the Faubles filed a motion for summary judgment.[3]

In *Federal Kemper*, the appellant, Carol R. Arnold, received $5,000 in insurance proceeds from the Federal Kemper Insurance Company. Thereafter, the appellant recovered $215,000 pursuant to a settlement with the tortfeasor, one-third of which went to the appellant's attorney. In an action to enforce the subrogation clause included in the policy, the Circuit Court awarded Federal Kemper the full $5,000. Upon appeal, this Court modified the judgment and held that the $5,000 reimbursement should be reduced to reflect Federal Kemper's *pro rata* share of the appellant's legal fees with regard to the third-party claim. As the opinion in *Federal Kemper* states:

> Because attorneys' fees and other reasonable expenses are a routine cost in obtaining a satisfactory judgment or settlement, we will construe the reimbursement provisions of the contract as reflecting appropriately the cost to the covered person of obtaining the recovery. In this case, the cost was a fee of one-third of the recovery to the administratrix's lawyer. The reimbursement under the subrogation clause should thus be reduced *pro rata*, by one-third [.]

183 W.Va. at 34, 393 S.E.2d at 672. *See also*, syl. pt. 3, *Anderson v. Wood*, 204 W.Va. 558, 514 S.E.2d 408 (1999) (once the West Virginia Department of Health and Human Resources enforces its statutory subrogation rights, it becomes liable to the recipient of medical benefits for its *pro rata* share of the costs and attorney fees incurred by the recipient in recovering his or her medical expenses from a third party); *Nationwide Mutual Insurance Co. v. Dairyland Insurance Co.*, 191 W.Va. 243, 245 n. 3, 445 S.E.2d 184, 186 n. 3 (1994) (confirming the principle in *Federal Kemper* that, when a covered person has recovered from a third party, the insurer's reimbursement based upon subrogation should be reduced by the insurer's *pro rata* share of the cost to the covered person of obtaining the recovery against the third party).

On October 6, 2005, the Circuit Court decided the "rights and duties of the parties under the insurance contract and settlement agreement" and granted summary judgment in favor of the Faubles. Citing *Federal Kemper*, the Circuit Court determined that Nationwide should pay a *pro rata* share of the Faubles' attorney fees "because the Faubles undertook to negotiate and settle with the third party tortfeasor." Thus, of the $49,843.43 in insurance proceeds, Nationwide was entitled to reimbursement in the amount of $33,228.96, and the Faubles were entitled to retain $16,614.47 for attorney fees.

As stated above, an appeal by Nationwide from the October 6, 2005, order was refused by this Court, and, at this point, neither Nationwide nor the Faubles challenge the validity of the $16,614.47 reduction.

## B.

### The Order of December 5, 2006

In June 2006, the Faubles filed a petition in the Circuit Court against Nationwide, citing *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W.Va. 323, 352 S.E.2d 73 (1986), and asking for an award of attorney fees in the amount of $60,610.

In *Hayseeds*, the insureds, James and Lynn Trovato, prevailed in the Circuit Court of Mason County against their insurer upon

---

3. It should be noted that Alex E. Paris Contracting, Inc., also filed a motion for summary judgment against Nationwide. The motion alleged: "Because of the dispute between Nationwide and the Plaintiffs regarding Nationwide's *pro rata* share of the Plaintiff's attorney fees, Alex Paris has been delayed in paying the settlement and obtaining a release from the Plaintiffs." In view of the subsequent granting of summary judgment in favor of the Faubles, however, the Circuit Court declared Paris Contracting's motion to be moot.

a claim for the fire-loss of a building. Recovering $150,000 upon the policy, the insureds' evidence at trial indicated that the insurer failed to adequately investigate the facts and circumstances surrounding the fire. Upon appeal, this Court affirmed the $150,000 recovery and held:

> [W]henever a policyholder must sue his own insurance company over any property damage claim, and the policyholder substantially prevails in the action, the company is liable for the payment of the policyholder's reasonable attorney fees. Presumptively, reasonable attorneys' fees in this type of case are one-third of the face amount of the policy, unless the policy is either extremely small or enormously large.

177 W.Va. at 329–30, 352 S.E.2d at 80.

Distinguishing the third-party claim against Paris Contracting from the June 2006 petition against Nationwide, the Faubles alleged that they were entitled to attorney fees in the amount of $60,610 under *Hayseeds*: (1) because they substantially prevailed against Nationwide in the litigation concerning their right under *Federal Kemper* to reduce Nationwide's subrogation reimbursement by one-third and (2) because $60,610 is one-third of the $181,830 face amount of the homeowners policy issued to them by Nationwide. In the alternative, the Faubles asserted that they were entitled to attorney fees in the amount of $23,550 which, unrelated to the time required in obtaining the settlement agreement with Paris Contracting, constituted the total itemized charges for legal work relating to Nationwide's refusal to accept any off-set from their subrogation reimbursement.

Pursuant to the order of December 5, 2006, however, the Circuit Court refused to grant relief upon the Faubles' petition for attorney fees. According to the Circuit Court, the previously awarded subrogation reduction in the amount of $16,614.47 did not constitute a contractual benefit arising from the homeowners policy issued by Nationwide, and, therefore, the $16,614.47 reduction was insufficient to invoke the "substantially prevailed" doctrine set forth in *Hayseeds*. Moreover, without discussing alternative amounts, the Circuit Court concluded that the Faubles' request for $60,610 in attorney fees was unreasonable.

The appeal to this Court concerns the December 5, 2006, order.

## II.

### Standard of Review

■ Insofar as the facts relevant to this appeal are not in dispute and the questions before this Court are to be resolved, primarily, upon an application of prior case decisions, our review of the December 5, 2006, order of the Circuit Court is *de novo*. As syllabus point 2 of *State ex rel. Orlofske v. City of Wheeling*, 212 W.Va. 538, 575 S.E.2d 148 (2002), holds: "'Where the issue on an appeal from the circuit court is clearly a question of law ... we apply a *de novo* standard of review.' Syllabus point 1, in part, *Chrystal R.M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." *See also, In re Marriage of Betty L.W. v. William E.W.*, 212 W.Va. 1, 5, 569 S.E.2d 77, 81 (2002)(Where lower court rulings are primarily based upon matters of legal interpretation, this Court employs a *de novo* standard of review); *State v. Leep*, 212 W.Va. 57, 67, 569 S.E.2d 133, 143 (2002) (This Court reviews *de novo* a lower court's interpretation or application of the law.); syl. pt. 1, in part, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996) (Ostensible findings of fact, which entail the application of law or constitute legal judgments which transcend ordinary factual determinations, must be reviewed *de novo*.).

■ Moreover, although the Faubles and Nationwide dispute whether the $16,614.47 off-set and the litigation surrounding it directly arose from the homeowners policy issued by Nationwide within the meaning *of Hayseeds*, this Court notes the language found in *Columbia Casualty Company v. Westfield Insurance Company*, 217 W.Va. 250, 617 S.E.2d 797 (2005), to the effect that both the interpretation and application of an insurance policy in light of undisputed facts "is a matter of law that we address *de novo*." 217 W.Va. at 251, 617 S.E.2d at 798.

## III.

## Discussion

### A.

### The Application *of Hayseeds*

■ The Faubles emphasize that the $80,000 settlement agreement they reached with Alex E. Paris Contracting, Inc., in January 2005 was held in abeyance pending resolution of whether Nationwide was entitled to full reimbursement of the $49,843.43 it paid pursuant to the homeowners policy. According to the Faubles, Nationwide's insistence upon a dollar-for-dollar reimbursement was unwarranted under *Federal Kemper* and resulted in the necessity of filing the cross-claim and the request for declaratory relief. As reflected in the order of October 6, 2005, the Circuit Court, applying *Federal Kemper*, agreed and determined that Nationwide's reimbursement pursuant to the subrogation provision of the policy would be reduced by $16,614.47. An appeal from that ruling was refused by this Court. Thus, the Faubles contend that they substantially prevailed and were entitled to reasonable attorney fees under *Hayseeds* and that the order of December 5, 2006, denying relief should be reversed.[4]

Nationwide, however, contends that the "substantially prevailed" doctrine set forth in *Hayseeds* does not apply because, as the Circuit Court concluded, the previously awarded $16,614.47 reduction did not constitute the vindication of a contractual benefit arising from the homeowners policy. According to Nationwide, when the Fauble home sustained damages, coverage was not questioned, and Nationwide promptly paid the $49,843.43 in insurance proceeds. Consequently, Nationwide asserts that the subsequent reduction of its subrogation interest by the Circuit Court was in the nature of an equitable remedy which did not arise from the policy.

In affirming the award of attorney fees in *Hayseeds,* this Court observed that, when an individual purchases an insurance policy, he or she expects to receive the benefit of the bargain, rather than vexatious, time-consuming and expensive litigation against his or her insurer. 177 W.Va. at 329, 352 S.E.2d at 79, 80. That observation was subsequently noted in *Miller v. Fluharty,* 201 W.Va. 685, 500 S.E.2d 310 (1997). In *Miller,* this Court affirmed an award of $33,333 in attorney fees where the insurer failed to timely evaluate and pay the policy limits upon the insured's claim for underinsured motorist proceeds. Concluding that the insured "substantially prevailed" in the litigation concerning the underinsured motorist policy, this Court, in *Miller,* concluded that, although liability under the policy was reasonably clear, the insured had been "forced to conduct depositions, settlement negotiations, prepare for trial and generally engage in litigation" which would not have been necessary had the insurer met its contractual responsibilities. 201 W.Va. at 699, 500 S.E.2d at 324.

While we acknowledge that *Miller* involved the amount of coverage the insurer was required to pay under the policy rather than a dispute over the reduction of an insurer's subrogation recovery, this Court is of the opinion that the Faubles' entitlement to reduce Nationwide's reimbursement by $16,614.47 was a necessary element of the subrogation clause included in the homeowners policy issued by Nationwide and that the enforcement of that entitlement thus arose from the insurance contract. As the language of *Federal Kemper* set forth above states: "[W]e will construe the *reimbursement provisions of the contract* as reflecting appropriately the cost to the covered person of obtaining the recovery." (emphasis added)[5] In that regard, although we review this

---

4. The Faubles clarify that they are not seeking additional attorney fees with regard to their third-party claim against Paris Contracting which culminated in the settlement agreement. Rather, their June 2006 petition against Nationwide, upon which relief was denied, concerned Nationwide's alleged intransigence concerning its reimbursement and the litigation required to resolve that issue.

5. The subrogation clause in *Federal Kemper* stated in part:

    A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

    1. Whatever is necessary to enable us to exercise our rights; and

matter *de novo*, we note that, in the order of October 6, 2005, the Circuit Court stated that the reduction of Nationwide's claim for reimbursement was decided upon the "rights and duties of the parties under the insurance contract and settlement agreement."

Liability under the homeowners policy based upon the use of explosives was reasonably clear. However, the Faubles' $80,000 settlement with Paris Contracting failed to proceed because of Nationwide's insistence, *Federal Kemper* notwithstanding, upon a dollar-for-dollar reimbursement of the entire $49,843.43. Consequently, as in *Miller*, the Faubles were forced to engage in litigation which, herein, involved filing an action in the Circuit Court against Paris Contracting to enforce the settlement agreement and filing a cross-claim and request for declaratory relief against Nationwide. The Faubles were successful before the Circuit Court as shown by the order of October 6, 2005, and in this Court upon appeal.

Therefore, this Court concludes that the Faubles "substantially prevailed" within the meaning of *Hayseeds* and that, as a result of the litigation imposed upon them to obtain the $16,614.47 reduction, reasonable attorney fees should have been awarded against Nationwide.[6]

## B.

### The Reasonableness of the Attorney Fees

■ Pursuant to the "substantially prevailed" doctrine of *Hayseeds*, reasonable attorney fees are, presumptively, "one-third of the face amount of the policy, unless the policy is either extremely small or enormously large." 177 W.Va. at 329–30, 352 S.E.2d at 80. Thus, the Faubles assert that they should have been awarded $60,610 in attorney fees because that amount is one-third of the $181,830 face amount of the homeowners

policy issued by Nationwide. In the alternative, the Faubles assert that they should have been awarded $23,550 in attorney fees which, unrelated to the time required in obtaining the settlement agreement, constituted the total itemized charges for legal work relating to Nationwide's refusal to accept any off-set from their subrogation reimbursement.

■ As reflected in the December 5, 2006, order, the Circuit Court denied relief and, in addition, found the $60,610 to be unreasonable without making reference to the $23,550 or to any other amount. The record before us contains no transcripts of hearings before the Circuit Court wherein attorney fees were discussed. In view of the wide disparity between the alternative amounts requested by the Faubles, and the absence of support in the record currently before us for the $60,610 demand (beyond the presumption found in *Hayseeds*), this Court is of the opinion that a remand to the Circuit Court is appropriate for a determination of the amount of reasonable attorney fees to which the Faubles are entitled upon their June 2006 petition. Upon remand, guidance may be found in syllabus point 5 of *Richardson v. Kentucky National Insurance Company*, 216 W.Va. 464, 607 S.E.2d 793 (2004), which holds:

> The means that a circuit judge uses to calculate a reasonable attorney's fee is a matter left to the judge's discretion. We reiterate our holding in *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986), however, that a reasonable attorney's fee is presumptively one-third of the face amount of the policy, unless the amount disputed under the policy is either extremely small or enormously large. In these latter circumstances, the

183 W.Va. at 32–33, 393 S.E.2d at 670–71.

---

2. Nothing after loss to prejudice them.
* * *
  B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall;
    1. Hold in trust for us the proceeds of the recovery; and
    2. Reimburse us to the extent of our payment.

6. As the brief filed by the Faubles in this Court states: "Nationwide forced the Faubles to litigate settled questions of West Virginia law and thereby interfered with and delayed the Faubles' recovery for their damaged house."

judge shall conduct an inquiry concerning a reasonable attorney's fee.

 As indicated in *Richardson*, further guidance is provided by *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986), syllabus point 4 of which states:

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syl. pt. 7, *Shafer v. Kings Tire Service*, 215 W.Va. 169, 597 S.E.2d 302 (2004); syl. pt. 3, *Statler v. Dodson*, 195 W.Va. 646, 466 S.E.2d 497 (1995); syl. pt. 4, *Firstbank Shinnston v. West Virginia Insurance Company*, 185 W.Va. 754, 408 S.E.2d 777 (1991). *See also*, Rule 1.5.(a) of the West Virginia Rules of Professional Conduct which sets forth similar factors to be considered in determining the reasonableness of attorney fees.

## IV.

### Conclusion

The Circuit Court committed error in not awarding the Faubles reasonable attorney fees upon their June 2006 petition against Nationwide. However, the $60,610 sought by the Faubles is unsupported by the record currently before this Court. Therefore, the December 5, 2006, order of the Circuit Court of Berkeley County, West Virginia, is reversed, and this action is remanded to that Court for a determination of the amount of reasonable attorney fees to which the Faubles are entitled, including an amount of reasonable attorney fees and costs incurred by the Faubles in appealing the December 5, 2006, order to this Court.

Reversed and Remanded